**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| WILDEARTH GUARDIANS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:15-cv-00159-WJ-KBM |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. ARMY CORPS OF ENGINEERS and | ) | **PLAINTIFF'S RESPONSE TO** |
| U.S. FISH AND WILDLIFE SERVICE, | ) | **FEDERAL DEFENDANTS'** |
| | ) | **MOTION TO CONTINUE** |
| Federal Defendants. | ) | **TEMPORARY STAY OF** |
| | ) | **LITIGATION** |

_____

**INTRODUCTION**

On May 4, 2016, Federal Defendants filed a motion to continue staying this litigation.

ECF Dkt. 21. The Court should deny the Motion. Plaintiff WildEarth Guardians ("Guardians")

previously agreed to a seven-month stay for Federal Defendants to complete consultation on the

effects of the challenged action on the yellow-billed cuckoo under Section 7(a)(2) of the

Endangered Species Act. ECF Dkt. 16 (Aug. 26, 2015). Federal Defendants have not completed

the consultation, which has fallen victim to a dilatory process and changing priorities, and seek

an additional five months to complete the consultation. However, Federal Defendants have not

met their heavy burden of showing that they would experience hardship or iniquity if the Court

does not allow the preliminary stages of this litigation—production of the administrative record,

resolving record issues, and setting a briefing schedule—to go forward. Moreover, Guardians

will be prejudiced by further delay in litigating this case.

**RELEVANT BACKGROUND**

On May 20, 2014, the U.S. Army Corps of Engineers ("Corps") signed a Record Of Decision approving a project to replace 43 miles of existing levees along the west side of the Rio Grande between the San Acacia Diversion Dam north of Socorro to the Elephant Butte Reservoir (hereafter, the "Levee Project") with a taller, permanent engineered levee. On February 28, 2013, the U.S. Fish and Wildlife Service ("the Service") issued a final programmatic Biological Opinion ("BiOp") on the effects of the Corps' proposed Levee Project on the endangered Rio Grande silvery minnow and its designated critical habitat and the endangered Southwestern willow flycatcher and its designated critical habitat. Seven months later, on October 3, 2014, the Service listed the yellow-billed cuckoo as a threatened species under the ESA. 79 Fed. Reg. 59,992 (Oct. 3, 2014).[1]

On February 24, 2015, Guardians filed a Petition for Review of Agency Action, alleging that the Corps' authorization of the Levee Project violated the National Environmental Policy Act ("NEPA"). ECF Dkt. 1. Guardians also alleged that the Service violated the Endangered Species Act ("ESA") when it concluded that the Levee Project would not jeopardize the Rio Grande silvery minnow and the Southwestern willow flycatcher or adversely modify their designated critical habitat. *Id.* On May 20, 2015, Guardians amended its Petition to add three claims against the Corps under the ESA related to the yellow-billed cuckoo, alleging that the

---

[1] The Service first determined that listing the yellow-billed cuckoo under the Endangered Species Act was warranted but precluded by other priorities on July 25, 2001. 66 Fed. Reg. 38,611 (July 25, 2001). Part of the Service's basis for this determination was that the status of the species in New Mexico along the Rio Grande "would likely experience future declines in the State due to loss of riparian woodlands." *Id.* at 38,613. These declines were caused by water and flood control projects along the Rio Grande that "have altered flow regimes and river dynamics, inhibiting regeneration of cottonwood-willow riparian habitats . . . The future degradation and loss of such riparian vegetation would limit the amount of habitat available for the cuckoo." *Id.* at 38,616.

Corps failed to consult with the Service as to the Levee Project's adverse impacts to the cuckoo, failed to ensure that the Levee Project complies with the procedural and substantive requirements of Section 7(a)(2) of the ESA, and failed to ensure that the project does not cause "take" of yellow-billed cuckoo in violation of Section 9 of the ESA.[2] ECF Dkt. 11 (claims 4, 5 and 6).

On August 31, 2015 this Court stayed the litigation until April 16, 2016 to allow time for completion on consultation between the Corps and the Service on the Levee Project's effects on the yellow-billed cuckoo. ECF Dkt. 17. Although consultation was ongoing and a resolution was at least eight months away, and construction had commenced on the first segment of the Project, the Corps did not withdraw or stay its authorization of the Levee Project.

The Levee Project will be constructed in six segments. Motion at 2, Nieto Decl. ¶ 4 (ECF Dkt. 21-1). The first construction phase is in the vicinity of the City of Socorro, the largest population center in the Project area. Guardians recognizes that an engineered levee may be the most effective option to protect the residential community of Socorro; therefore, Guardians did not seek a preliminary injunction for this segment of the Project, despite its contention that the approval of the Project, in its entirety, violates NEPA . The agricultural nature of the remainder of the Project area south of Socorro allows for a more diverse range of flood control options that would balance the need for flood control with protection of the ecosystem that endangered species need to survive.

---

[2] On February 24, 2015 Guardians sent the Corps and the Service a 60-day notice of intent to sue the agencies over their failures to comply with the ESA with respect to the Levee Project's effects on the yellow-billed cuckoo.

**ARGUMENT**

I.   **Standard of Review**

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colo. River Conservation Dist. v. United States*, 424 U.S. 800, 817–18 (1976). "[T]he burden of making out the justice and wisdom of a departure from the beaten track [lies] heavily on the petitioners, suppliants for relief." *Landis v. North American Co.*, 299 U.S. 248, 256 (1936). To warrant a stay, defendants "must make out a *clear case of hardship or inequity* in being required to go forward, if there is even a fair possibility that the stay for which [it] prays will work damage to some one else." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109–10 (9th Cir. 2005) (quoting *Landis*, 299 U.S. at 255) (emphasis added).

In evaluating a motion to stay, courts weigh the competing interests at stake. These include "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citation omitted). "Clear hardship or inequity" does not arise from merely forcing one litigant to "proceed toward trial" and "defend a suit, without more." *Lockyer*, 398 F.3d at 1112. The movant bears the burden of establishing a clear case of hardship or inequity if they are required to move forward in this action. *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (recognizing that "[t]he proponent of a stay bears the burden of establishing its need.").

II.  **Guardians will be Prejudiced in Timely Resolution of Its NEPA and ESA Claims if the Stay Continues for Another Five Months**

Federal Defendants argue that Guardians will not be prejudiced by continuing the stay because Guardians will have "ample" time to seek judicial review of the challenged action or

injunctive relief against further construction, given that the next phase of construction is a year away. Motion at 5-6. However, this argument greatly oversimplifies the prejudice Guardians is seeking to avoid by opposing another lengthy stay. The crux of Guardians' case is to compel the Corps to comply with NEPA's requirement that it consider a reasonable range of flood control alternatives, beyond constructing a continuous 43-mile long concrete levee, that could result in a more naturally functioning river system crucial for the health of the Rio Grande and its dependent ecosystems. If Guardians prevails on its claim that the Corps failed to analyze a reasonable range of alternatives, and the Court remands the Corps' authorization of the Levee Project for compliance with NEPA, this outcome could result in the Corps analyzing and ultimately adopting an alternative for the remaining 35 miles of the project area that would allow large-scale restoration of the Rio Grande ecosystem in the San Acacia reach, reconnection of the river to its floodplain, and protection of listed species. Designing and analyzing the environmental impacts of an alternative that combines structural and non-structural measures will take time. Thus, the Corps and Guardians both benefit from having the alternatives claim resolved sooner rather than after funds and other resources have been committed for construction of a levee design that has been abandoned. Accordingly, extending the stay will prejudice Guardians' ability to obtain the full scope of relief by foreclosing opportunities to redesign the remaining 35 miles of the Levee Project.[3]

---

[3] Although Guardians has not sought a preliminary injunction to cease construction of the first segment of the Levee Project because it recognizes both the need to protect the City of Socorro from flooding and the low potential for restoration of the river's ecosystem and floodplain connection in this highly disturbed area, by proceeding with construction the Corps is already foreclosing some of the relief open to Guardians if it prevails on the merits. Moreover, the Corps is proceeding with an action that could jeopardize the yellow-billed cuckoo and adversely affect the Rio Grande silvery minnow and Southwestern willow flycatcher in violation of the ESA.

Continuing to stay this lawsuit also prejudices Guardians' interests in protecting the Rio Grande ecosystem and the endangered species that depend on it, such as the Rio Grande silvery minnow and Southwestern willow flycatcher. Minnow habitat in the reach of the Rio Grande encompassed by the Levee project is already degraded due to stream bed aggradation (i.e., rising of the river bottom due to sedimentation) caused by existing levees that straightened the river's natural channel. 68 Fed. Reg. 8,088, 8,090 (Feb. 19, 2003). In the BiOp for the Levee Project, the Service concluded that the Project would result in adverse effects to the silvery minnow, temporary adverse effects to 64 acres of minnow critical habitat, and permanent adverse effects to 13.5 acres of minnow critical habitat. The minnow population in the Middle Rio Grande has been in a steady downward spiral for several years; in 2013, monitoring studies found the minnow population was at its lowest since 2003. Am. Compl. ¶¶ 60-65. As an example of how quickly minnow populations are affected by river conditions, in September 2015 researchers collected 192 individuals but because of low flows and river drying, in October 2015 researchers collected only 16 minnows. Exhibit 1 at 2 (excerpt from October 2015 Minnow Population Monitoring Report).

The willow flycatcher is not faring any better in the Project Area. At the time of the flycatcher's listing, reduced peak flows, channelization, and reduced sediment in the Middle Rio Grande below Cochiti Dam had eliminated thousands of acres of flycatcher habitat. 60 Fed. Reg. 10,694 (Feb. 27, 1995); 62 Fed. Reg. 39,129 (July 22, 1997). In the Levee BiOp, the Service determined that the Project would result in: adverse effects to 11 flycatcher territories, temporary adverse effects to 94.8 acres of flycatcher critical habitat, permanent adverse effects to between 60 and 200 acres of flycatcher critical habitat, and long-term alteration of 460 acres of flycatcher critical habitat. The Corps' failure to consider how extensive impairment and/or destruction of

minnow and flycatcher habitat would affect these species forms the basis of Guardians' second NEPA claim against the Corps. Am. Compl. ¶¶ 137-44. Because construction of the first phase of the Project has already begun without the requisite analysis of its impacts to listed species, the species are already in peril, and because success on the merits of Guardians' NEPA claims could result in cessation of construction, Guardians is prejudiced by continuing to stay this case.

Federal Defendants will likely argue that extending the stay for another five months will not lead to foreclosure of the opportunity to examine a full range of reasonable alternatives or analyze Project impacts to listed species at a later time because the next construction phase will not begin before September 30, 2016. However, such an argument would be premised on the assumption that the cuckoo consultation will be completed by September 30, an assumption that is belied by both the amount of time that has elapsed since the cuckoo was listed, triggering the Corps' ESA obligations, and the Service's track record of untimely BiOp completion.

The Service listed the yellow-billed cuckoo on October 3, 2014. On February 24, 2015, Guardians sent a notice of intent to sue the Corps over the Corps' failure to consult with the Service regarding the Levee Project's impacts on the cuckoo. Exhibit 2 (Notice of Intent). On May 20, 2015, Guardians amended its Petition for Review of Agency Action to include claims relating to the cuckoo. ECF Dkt. 11. On September 28, 2015, the Corps submitted a supplemental Biological Assessment to the Service that assessed the Levee Project's impacts on the cuckoo, and concluded that the Project may affect but was not likely to adversely affect the cuckoo. Exhibit 3 (Service's Letter to Corps). On October 26, 2015, the Service sent the Corps a letter stating that it did not concur with the Corps' "no effect" determination.[4] *Id*. The cuckoo

---

[4] The Corps' no effect determination for the cuckoo is puzzling given that the cuckoo and the flycatcher have similar habitat requirements, and in the BiOp the Service determined that the Project would adversely affect the flycatcher and adversely modify its critical habitat.

was listed over 18 months ago. The Corps did not produce a Biological Assessment of the Levee Project's impacts on the cuckoo until a year after listing and seven months after Guardians' notice of intent to sue. Nearly seven months have elapsed since the Service's determination that formal consultation was necessary. Federal Defendants have not provided any assurances to the Court or Guardians that the dilatory pace of the consultation process for the cuckoo is unlikely to continue. In fact, the list of the Service's competing obligations in ¶ 3 of the Murphy declaration (ECF Dkt. 21-2) render it likely that this dilatory pace will continue beyond September 30.

Furthermore, it is unlikely that the Service will be able to complete the cuckoo BiOp in the five-month time frame proposed in Federal Defendants' Motion given the Service's lengthy delay in completing other consultations. For example, the Middle Rio Grande BiOp referenced in ¶ 3.b of the Murphy declaration, and referenced in Federal Defendants' Motion at 4, is several *years* overdue. This history of delay in completing consultations combined with the number of other pending consultations that could divert resources away from the cuckoo consultation and the dilatory pace of the ongoing consultation only make it more likely that Federal Defendants will seek another continuance of the stay at the end of September. The delay on the Middle Rio Grande BiOp coupled with the delay in this case are further threatening the existence of the minnow, flycatcher, and cuckoo. Thus, allowing the litigation schedule in this case to be dependent on completion of the BiOp for the cuckoo could result in delaying this litigation by several more months or even years, prejudicing both Guardians' need for timely resolution of this case to avoid foreclosing the full scope of available relief and Guardians' interest in protecting the Rio Grande ecosystem by ensuring timely actions that could promote species recovery and stem the tide of extinction.

**III.    Federal Defendants Have Not Carried Their Burden of Showing a Clear Case of Hardship or Inequity**

Federal Defendants have failed to show that they would suffer any hardship from having to defend Guardians' NEPA and ESA claims related to the Levee Project, the authorization of which remains in place while consultation over the Project's impacts to the cuckoo is ongoing. *Lockyer*, 398 F.3d at 1112. Their argument that devoting resources to litigation, even the initial task of producing the administrative record for the NEPA claims against the Corps, would divert resources from the consultation and production of a BiOp rings hollow. Motion at 7. As a practical matter, Federal Defendants have provided no indication that the agency personnel writing the BiOp and engaging in consultation are the same personnel responsible for litigating the case if it is not stayed. With respect to the litigation itself, in addition to the ESA claims for the cuckoo, Guardians alleges NEPA claims against the Corps, stemming from the Corps' approval of the Levee Project based on a supplemental EIS and Record of Decision that do not comply with NEPA's requirements. Am. Comp. ¶¶ 132-144 (First and Second Claims for Relief). These claims are distinct from the ESA claims against the Corps and the Service. Resolution of the NEPA claims is not dependent on the same evidence necessary to decide the ESA claims. Therefore, production of the Corps' record for the NEPA claims would not delay the Service's completion of the BiOp or otherwise delay the cuckoo consultation.

Federal Defendants' assertions of hardship from being forced to litigate claims that will be altered or potentially mooted by issuance of a new BiOp also lack merit. Motion at 6. Guardians' NEPA claims against the Corps will persist, and could result in vacatur of the Corps' approval of the Levee Project, regardless of the outcome of the cuckoo consultation, and will not be altered or mooted by completion of the consultation. As discussed above, Guardians' NEPA claims are premised on the Corps' authorization of the Levee Project based on environmental

9

analyses that do not comply with NEPA. The Corps has not withdrawn its authorization of the

Levee project, and in fact the first segment of the project is already under construction. The

Corps is not preparing any supplemental environmental or alternatives analyses that could alter

or moot Guardians' NEPA claims. Even if Guardians' ESA claims related to the cuckoo could be

altered or mooted by completion of the supplemental BiOp and consultation, that will not alter

Guardians Third Claim for Relief against the Service that the no jeopardy conclusions for the Rio

Grande silvery minnow and Southwestern willow flycatcher were arbitrary and violated the

ESA. Am. Compl. ¶¶ 145-147.

The cases Federal Defendants cite to support claims of purported hardship from litigating

claims that may be mooted by ongoing ESA consultations are distinguishable from the current

case in one important respect: those cases only involved ESA consultation claims. In *NRDC v.

Kempthorne*, 2015 WL 3750305, at *3 (E.D. Calif. June 15, 2015), plaintiff challenged the

sufficiency of agency consultation under ESA Section 7(a)(2) for decisions to renew long-term

water contracts. Agency defendants sought a stay while they proceeded with consultation over

the contract renewals. *Id*. at *7. Because the consultation had the potential to resolve all of the

litigation issues and dispense with the need for a merits ruling on all of the claims, the court

granted the stay. *Id*. at *8. In *CBD v. Henson*, 2009 WL 1882827, at *1 (D. Or. June 30, 2009),

plaintiffs sued the Forest Service and Fish and Wildlife Service under ESA Section 7(d) over

their failure to reinitiate consultation for a Habitat Conservation Plan ("HCP") and Incidental

Take Permit ("ITP") based on new information on threats to a listed species. The federal

defendants were already working together to revise the HCP/ITP based, in part, on the same new

information plaintiffs were urging them to consider. *Id*. Similar to *NRDC*, the court found that

staying the case to allow federal defendants to complete the revisions of the HCP/ITP could

"moot and/or simplify most, if not all," of the litigation. *Id*. at 4. In both cases, plaintiffs only pressed ESA claims, with the result that staying litigation to allow federal defendants to complete ESA consultations could resolve all of the issues in the cases without the need for judicial review. This is not the case here where Guardians brings both NEPA and ESA claims, where resolution of some of the latter claims through the ongoing consultation process for the cuckoo will not have any effect on or help resolve Guardians' NEPA claims.[5]

## III.    Denying the Stay Motion Will Promote Judicial Economy

"Litigation and the deadlines that come with it promote the resolution of conflicts." Order Denying Stay, *Native Ecosystems Council v. Weldon*, No. 11-27-M-DWM (D. Mont. Apr. 26, 2011) (denying agency request for stay of litigation to perform a revised Environmental Assessment). Judicial efficiency in this case is best served by denying the stay and moving ahead expeditiously with production of the administrative record for the NEPA claims against the Corps, and resolving any record issues relevant to the NEPA claims.[6]   Record production and

---

[5] Moreover, although Federal Defendants list cases where courts have stayed litigation in similar situations, there are also analogous cases where courts have denied agencies' requests for stays or analogous voluntary remands. *See, e.g.*, *Natural Res. Def. Council v. Norton*, 2007 WL 14283, at *8–13, *13–16 (E.D. Cal. 2007) (denying agency's motions for voluntary remand or for stay pending completion of new consultation under the ESA); *Am. Rivers, Inc. v. NOAA Fisheries*, No. 04-0061, 2004 WL 2075032, at *4 (D. Or. Sept. 14, 2004) (motion to stay action challenging a biological opinion denied even though the U.S. Bureau of Reclamation had *already* reinitiated formal consultation, and a new biological opinion would be issued in the future).

[6] Federal Defendants do not assert that they would be burdened by production of the record for the NEPA claims at this time. Instead, they assert that record production is not necessary because "the Corps has already provided relevant documents to Plaintiff in response to requests under the Freedom of Information act ("FOIA"). Motion at 6. Given that the Corps has already compiled these documents, it would involve minimal effort to produce these documents and lodge them with the Court as the administrative record for the NEPA claims. Until the Corps takes this necessary step so that Guardians knows what the Corps considers the complete record for the NEPA claims, Guardians cannot assess whether the record is in fact complete as to the NEPA claims, whether documents are missing, or whether documents have been improperly excluded or withheld.

resolution of record issues will not burden the court prematurely, as the Service can produce the record for the ESA claim (Claim 3) when consultation is complete. Endless delay of the entire case, including the NEPA claims, to wait for completion of the Service's BiOp for the cuckoo does not serve the interests of justice.

Federal Defendants' assertion that continuing to stay the case would still allow Guardians "ample time" to seek a preliminary injunction prior to ground-disturbing behavior, Motion at 6, counsels against staying the case. Seeking to delay production of the administrative record and briefing schedule, actions which burden neither the Court nor Federal Defendants, while recognizing that Guardians may need to move for injunctive relief if the case is still stayed results in a greater burden on both the Court and Federal Defendants. If the case is delayed to the point where Guardians must resort to moving for a temporary restraining order ("TRO") or preliminary injunction ("PI") to prevent imminent injury, Federal Defendants will have to dedicate resources to briefing, preparing for, and engaging in argument on the motion—all on an expedited timeline. Seeking a TRO or PI will also burden the Court, a burden that can be avoided by allowing the preliminary stages of the NEPA claims in the case—production of the administrative record, setting the briefing schedule—to progress while the Service completes consultation.

Finally, accepting Federal Defendants' notion that a plaintiff can always move for injunctive relief if a stay drags on because of bureaucratic inertia would have the unintended effect of encouraging plaintiffs to move for injunctive relief as a matter of course whenever they disagree with a defendant on the appropriateness of a stay. Given that injunctive relief is "an extraordinary remedy never awarded as of right," *Winter v. Natural Res. Def. Council,* 555 U.S. 7, 24 (2008), creating a precedent whereby a plaintiff can only prosecute its case by moving for a

TRO or PI undermines the very notion of judicial economy that a stay is meant to promote. This case should be allowed to go forward now because the Corps' has already commenced construction on the challenged action. Further delay in resolving whether the Levee Project is in violation of the law is not appropriate and further endangers the Rio Grande and its dependent ecosystems.

## CONCLUSION

For the reasons stated above, Guardians respectfully requests that the Court deny Federal Defendants' Motion to Continue the Stay.

Respectfully submitted on the 27th day of May 2016.

/s/ Samantha Ruscavage-Barz
WildEarth Guardians
516 Alto Street
Santa Fe, NM 87501
505.401.4180
sruscavagebarz@wildearthguardians.org

Stuart Wilcox
WildEarth Guardians
2590 Walnut Street
Denver, CO 80205
720.331.0385
swilcox@wildearthguardians.org

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of May 2016, I electronically filed the foregoing Response and exhibits with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Samantha Ruscavage-Barz

13