## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

WILDEARTH GUARDIANS,

       Plaintiff,

      v.                                                          Civil No. 15-00159 WJ/KBM

U.S. ARMY CORPS OF ENGINEERS and
U.S. FISH AND WILDLIFE SERVICE,

       Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING FEDERAL DEFENDANTS' MOTION TO CONTINUE TEMPORARY STAY OF LITIGATION

THIS MATTER comes before the Court upon a Motion to continue Temporary Stay of Litigation filed on May 4, 2016 by U.S. Army Corps of Engineers and U.S. Fish and Wildlife Service ("Federal Defendants") **(Doc. 21)**.   Having reviewed the parties' briefs and applicable law, the Court finds that Defendants' motion is well-taken and, therefore, is granted.

## BACKGROUND

This lawsuit challenges the recently approved project of the U.S. Army Corps of Engineers ("Corp") to replace 43 miles of existing levees along a portion of the Rio Grande River with a taller, permanent engineered levee (hereinafter, the "Levee Project" or "Project"). Plaintiff filed its initial complaint, a Petition for Review of Agency Action ("Petition"), on February 24, 2015.  The Petition was amended on May 20, 2015 (Doc. 11), alleging violations of the National Environmental Policy Act ("NEPA") on several grounds.[1]  In the instant motion, the Federal Defendants request a temporary stay of this litigation until September 30, 2016 so that

---

[1] Under NEPA, a federal agency must prepare an environmental impact statement ("EIS") for all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C)(i); 40 C.F.R. § 1501.4.

the United States Fish and Wildlife Service ("FWS") can complete ongoing consultation with the Corps under the Endangered Species Act ("ESA").

The Rio Grande flows 1900 miles from its headwaters in the San Juan Mountains of Colorado to the Gulf of Mexico, its course traveling through the rocky canyons, deep gorges and open valleys of Colorado, New Mexico and Texas. In Texas, the river serves as the United States' border with Mexico. Doc. 11, ¶1. In the Rio Grande valley in central New Mexico, particularly the region from Cochiti Dam to Elephant Butte Reservoir ("Middle Rio Grande"), the Rio Grande historically roamed across an expansive floodplain, creating diverse ecosystems in its path. However, flows could be unpredictable due to summer rain events that caused temporary but dramatic increases in flows and flooding. At the start of the twentieth century, federal and local entities in the Middle Rio Grande took measures to constrain the path of the river by the construction of levees and dams. Plaintiff contends that these measures significantly altered the native ecosystem, causing measurable habitat loss and population decline of native species.

The San Acacia Reach, which runs from just north of Socorro to Elephant Butte Reservoir, remains "one of the last relatively wild reaches of the river in New Mexico." Doc. 11, ¶¶5, 45. Plaintiff contends that the Levee Project threatens any plan for large-scale restoration of this unique segment of the Rio Grande and will further imperil the handful of endangered species already struggling to survive. Plaintiff seeks to prevent the Corps from foreclosing opportunities to conduct large-scale restoration to reconnect the Rio Grande and its floodplain in order to allow native species that depend on this ecosystem to survive and thrive. Doc. 11, ¶4.

The Corps completed an Environmental Impact Statement ("EIS") for the Project pursuant to NEPA in May 2014. Prior to that time, the Corps had consulted with FWS as

required by Section 7 of the Endangered Species Act ("ESA").[2]   As a result of that consultation, on February 28, 2013, FWS issued a Programmatic Biological Opinion ("BiOp") addressing the Project's impacts on the endangered Rio Grande silvery minnow and the southwestern willow flycatcher.  The BiOp imposed certain measures that would protect endangered species that the Corps must follow as it implements the Project.

Several months after the EIS was completed, another species, the yellow-billed cuckoo, was listed as threatened under the ESA.  79 Fed.Reg. 59,992 (Oct. 3, 2014).  This new listing required the Corps to prepare a revised Biological Assessment and reinitiate a Section 7 consultation with FWS regarding the impacts of the Levee Project on the cuckoo, which includes completion of a new BiOp by FWS to evaluate the effects of the Project on the cuckoo.[3]   As a result of the new BiOp, FWS may conclude that the Project can proceed as currently planned, or it may find that the Project will jeopardize the cuckoo and suggest other reasonable alternatives that avoid jeopardy.   FWS may provide the Corps with an Incidental Take Statement that, if followed, provides the Corps a safe harbor from liability under the ESA's prohibition against the "taking" of an endangered species or a threatened species.   16 U.S.C. §1536(b)(4); 50 C.F.R. §402.14(i)(1) (noting that an incidental take statement "[s]pecifies the impact, i.e., the amount or extent of such incidental taking on the species").   The completion of a new BiOp by FWS to assess the Project's impact on the cuckoo is the basis for Defendants' request for a stay.

A stay has already been entered in this case.   On April 26, 2015, the parties jointly requested a stay of this litigation until April 15, 2016 because of the on-going consultation

---

[2] Section 7(a)(2) of the ESA, 16 U.S.C. § 1536(a)(2) imposes a substantive duty on federal agencies to "insure that any action . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification" of the species' designated critical habitat." 16 U.S.C. § 1536(a)(2).

[3] According to Plaintiff, the first Biological Assessment submitted by the Corps to FWS concluded that the Project was not likely to adversely affect the cuckoo.  This assessment was rejected by FWS which lead to formal consultation between the Corps and FWS.  *See* Doc. 23-3.

between the Corps and FWS with regard to the yellow-billed cuckoo. The parties agreed that the results of the ongoing consultation "could impact the claims before the Court and the content of administrative records to be reviewed by the Court when resolving Guardians' claims," and therefore a stay was preferable to proceeding with piecemeal litigation of Plaintiff's claims. Doc. 16 at 2.  The Court granted the motion to stay the case until April 15, 2016.  Doc. 17. Before that stay expired, Defendants filed this motion to continue the temporary stay until September 30, 2016 because of staff shortages and the need to complete consultations on other projects on the Rio Grande.

## I.      Legal Standard

The power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co*., 299 U.S. 248, 254-55 (1936); see also *Pet Milk Co. v. Ritter*, 323 F.2d 586, 588 (10th Cir. 1963); *CMAX v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). A court may enter a stay "pending resolution of independent proceedings which bear upon the case . . . . whether the separate proceedings are judicial, administrative, or arbitral in character," and granting the stay "does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Leyva v. Certified Grocers of California, Ltd*., 593 F.2d 857, 863-64 (9th Cir. 1979) (citations omitted).

Three factors guide this Court's determination of whether a stay should be granted: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of which could be expected to result from a stay." *CMAX* , 300 F.2d at 268.

## II.   Analysis

The parties are unable to agree on whether continuation of the current stay of this case is warranted.   Defendants contend that continuing the stay will not harm Plaintiff, and will avoid the harm to Federal Defendants and a waste of judicial resources in attempting to resolve issues now that will be altered and even mooted by the completed consultation.   Plaintiff argues that the reinitiated consultation may be unnecessary if Plaintiff prevails on its claim that the Corps failed to analyze a reasonable range of alternatives as required under NEPA. Under that scenario, Plaintiff would expect the Court to remand the case to require the Corp's compliance with NEPA and would further expect that additional assessment would result in the adoption by the Corps of an alternative to levee construction that would restore the floodplain and allow large-scale restoration of the Rio Grande ecosystem in the San Acacia reach.

### A.   Harm to Plaintiff

Defendants contend that continuing the stay of this litigation so that FWS can complete the consultation process with the Corps will cause no harm to Plaintiff.   Construction of the levees is planned in sex segments.   Construction of the first segment stretching from the Socorro Diversion Channel to Brown Arroyo is currently underway and is estimated to continue until February 2018.   Doc. 21-1 (Murphy Decl., ¶4.   No stages beyond this first segment have been funded and no construction on future segments will start prior to October 2017.   Ex. 2   Plaintiff does not object to the construction going on in the Socorro segment of the Levee Project.   *Id*; *see* Doc. 11 (Am.Pet) at 39 (paragraph G).[4]

Plaintiff claims that a stay prejudices its interests in protecting the Rio Grande ecosystem and the endangered species that depend on it, such as the Rio Grande silvery minnow and

---

[4]   While Plaintiff does not oppose construction of an engineered levee in the Socorro segment "to protect the residential community of Socorro," it nevertheless contends that the approval of the Project, in its entirety, violates NEPA.   *See* Doc. 23 at 3.

Southwestern willow flycatcher.  Habitat for these species is already degraded and continuing to be degraded as a result of the existing levels; thus delay as a result of a stay only makes things worse for these species. Because a litigation stay would not halt the progress of the Levee Project, Plaintiff claims that it may have to move for injunctive relief prior to ground-disturbing behavior which would only further burden the Court and delay the litigation. The specter of Plaintiff filing an injunction is not enough to persuade the Court that a stay should be avoided. The portion of the project that will proceed during the requested stay is the segment to which Plaintiff does not object.  Moreover, construction of the levee segments which Plaintiff seeks to stop is not imminent and so the duration of the stay (less than four months) is not long enough to be concerned about the need for injunctive relief during the delay—although it does emphasize the need to hold Defendants to the proposed time frame they request.

Plaintiff is also skeptical that the ongoing consultation between the Corps and FWS will be completed within the five-month time frame proposed in Defendants' motion, and perhaps this skepticism is healthy and well-founded when considering the usual speed (or lack of it) when dealing with government bureaucracy. However, a ruling denying the stay on the ground that the consultation *may* not be finished would be based on speculation because there is no prejudice to Plaintiff unless and until that happens.  At the same time, the Court cautions the federal defendants that a grant of stay will be premised on the expectation that the ongoing consultation and accompanying reports will be completed by September 30, 2016.  A further continuance may not be considered favorably by the Court.

B.    Harm to Defendants

Defendants argue that it is prejudicial to the federal agencies involved in this matter to devote resources to litigation while simultaneously engaging in consultation.  FWS officials who

6

are responsible for compiling an Administrative Record in this case are also responsible for preparing the new BiOp to reassess the impact of the Levee Project on the cuckoo. Doc. 21-2 (Murphy Decl.). Denial of a stay would mean that staff time and resources would have to be diverted from completing the consultation to compiling thousands of pages of an Administrative Record, which would have to be re-assessed once the consultation was completed. Plaintiff questions Defendants' assertion that continuing the litigation will divert agency resources from completion of the consultation, but the Declaration of Wally Murphy, the New Mexico Ecological Services Field Office Supervisor with the Southwest Region of FWS, amply supports that assertion and the Court is persuaded that denial of a stay will bear a high cost in terms of time and resources needed to complete the consultation in a timely fashion.

Defendants refer to case law where courts have stayed litigation under NEPA and the ESA pending completion of reinitiated consultation. *See. e.g., Natural Res. Def. Council v. Kempthorne*, No. 1:05-CV-01207 LJO, 2015 WL 3750305, at *8 (E.D. Cal. June 15, 2015) (granting stay of litigation during reinitiated consultation); *Ctr. for Biological Diversity v. Henson*, No. CIV. 08-946-TC, 2009 WL 1882827, at *3 (D. Or. June 30, 2009) (same); *Pub. Emps. for Envt'l. Responsibility v. U.S. Dep't of Navy*, No. 08-cv-5552-BHS, 2009 WL 2163215, at *10-12 (W.D. Wash. July 17, 2009) (granting stay pending completion of renewed ESA consultation and NEPA analysis). Plaintiff cites to other cases which denied agencies' requests for stays, and argues that stays are appropriate where the consultation had the potential to resolve all of the litigation issues and dispense with the need for a merits ruling on all the claims. Doc. 23 at 11, n.5. Plaintiff urges the Court to proceed full speed ahead with its alleged NEPA claims because in this case, resolution of the ESA claims through re-consultation will not affect a resolution on the NEPA claims.

Defendants perceive this as an argument for bifurcation of the NEPA and ESA claims, and the Court agrees that this is exactly what Plaintiff is seeking.  Plaintiff concedes that the ongoing consultation does not have the potential to resolve all of the issues in this case, which means that even if the request for a stay is denied and the NEPA claims are addressed first, the Court would still have to deal with the ESA claims when the consultation is completed. Dividing this litigation into two parts would also require the Court to revisit the same facts, material and witnesses when the ESA claims are ready for ruling at a later time. This option is a waste of judicial resources and is prejudicial to the federal defendants who have to defend common issues twice.  *See, e.g., Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994) ("A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim.") (quoting *Freeman v. Cont'l Gin Co.*, 381 F.2d 459, 469 (5th Cir. 1967)).

The Court also agrees that Defendants would be prejudiced if Plaintiff is allowed to move forward with its NEPA claims during the ongoing consultation for several reasons: (1) Defendants would be required to file multiple Administrative Records, or at least require a substantial supplementation and/or correction of any Record that is initially filed; (2) bifurcation would require Defendants to litigation this case while simultaneously completing the ongoing consultation process, resulting in a waste of federal agency time and resources; and finally (3) it would force Defendants to defend one set of claims while at the same time, the ongoing assessment may affect the final resolution of this case. *See Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936) (noting that a court may forestall litigation to allow parallel proceeding to go forward even where such proceeding "may not settle every question of fact and law," if "in all likelihood it will settle many and simplify them all").

The other problem with bifurcation is that the NEPA and ESA claims are not entirely distinct from each other. The NEPA claims are intertwined with the issues being addressed in the

ongoing consultation, and the NEPA analysis overlaps and can be influenced by the analysis conducted under the ESA.  For example, as Defendants point out, allegations in the Petition which focus on the 2013 BiOp and the yellow-billed cuckoo are also the subject of the currently ongoing consultation.  Also, allegations that the Corps failed to consider a reasonable range of alternatives under NEPA and failed to consider the impact of the Levee Project on endangered species may likely turn in part on the impacts of the proposed action on endangered species, which is exactly the subject of the ongoing consultation.

Plaintiffs contend that Defendants should be required to compile and produce the documents for the Administrative Record so that Plaintiff knows what the Corps considers to be the complete record for the NEPA claims.  However, at this point, whatever Record is compiled by Defendants will be incomplete without the benefit of information from the new assessment. *See Natural Resources Defense Council v. Kempthorne*, 2015 WL 3750305, at *8 (E.D.Cal.,2015) (Where agencies propose to resolve disputed issues administratively, courts should ordinarily "allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete."). Thus, it makes little sense to force Defendants to produce an Administrative Record which will not be complete or accurate until the ongoing consultation is completed.

Considering the potential harm to both parties, denying the request for a stay would prejudice Defendants more seriously than it would harm Plaintiff.  In fact, the Court sees little or no harm to Plaintiff in granting the request for a stay.

C.     Judicial Concerns

Defendants argue that continuation of the stay will conserve judicial resources, while Plaintiff contends that delay as a result of a stay will cause Plaintiff to move for injunctive relief

prior to any ground-disturbing behavior taken as part of the Levee Project.  The Court has already rejected potential requests for injunctions as a basis for denial of the stay, *see* discussion above, and finds that granting the stay would conserve judicial time and resources.

The reassessment and consultation with FWS has already started, and a delay of less than four months is a small price to pay to avoid an expenditure of time by the Court resolving ESA claims that may become altered or rendered moot when the consultation process is completed. *See Natural Res. Def. Council*, 2015 WL 3750305, at *8 (holding that staying litigation during reinitiated consultation benefits the court because the court is not required to adjudicate a merits challenge based on old information, and because the outcome of the consultation might avoid the need for judicial ruling on some issues).

Plaintiff suggests that Defendants have been dragging their feet in producing the Biological Assessment of the Project's impact on the cuckoo, noting that the assessment was not done until a year after listing and seven months after Plaintiff's notice of intent to sue.  Doc. 23 at 7-8, *see* note 2, supra.  This timeline is correct and it is true that the Biological Assessment was undertaken chronologically in response to Plaintiff's amendment of its Petition for Review of Agency Action.  However, the ESA's listing of the yellow-billed cuckoo did not occur until after the 2013 BiOp was issued and based on a review of the submitted declarations of the Corps and FWS officials responsible for the Project, the Court is satisfied that the federal defendants were not dilatory in reinitiating consultation on this newly-listed species.  Doc. 21-1 & 21-2 (Murphy & Nieto Decl.). Plaintiff does not take into account the length of time needed to conduct such an assessment, particularly when the new listing came after the Corps had already completed an EIS for the Levee Project.

Finally, Plaintiff argues that continuing the stay to allow Defendants to complete the consultation is unnecessary should Plaintiff prevail on the merits.  If that occurred, Plaintiff expects that the Court would remand the case to require the Corp's compliance with NEPA and would further expect that as a result of the remand, the Corps would adopt an alternative to levee construction that would restore the floodplain. Without plans to continue levee construction, there would be no need to re-engage FWS in an assessment of the impact of that construction on the yellow-billed cuckoo. Denial of the stay based on these expectations requires several assumptions which the Court is not prepared to make at this point.

Moreover, denying the stay because Plaintiff may prevail on the merits has little benefit when compared to the waste and inefficiency that would ensue if this litigation gets underway prematurely, whereas a delay of a few months is innocuous.  If the stay is denied and Plaintiff loses this case, the Court will have made rulings that did not consider Defendants' revised BiOp on the impacts of the Levee Project on the yellow-billed cuckoo.  The BiOp would still have to be completed, the Record would have to be revised, and the Court would have to revisit its rulings.   In contrast, if the stay is granted and Plaintiff ultimately prevails, all Plaintiff has lost is a delay of less than four months.  Granting the stay and allowing the Corps to complete its consultation with FWS now avoids the possibility of delay later, either in having the Court relitigate issues that were not considered with the new information, or in entering a stay at a less opportune time in order to allow Defendants to complete the consultation they have started and finalize the Administrative Record.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Continue Temporary Stay of Litigation (**Doc. 21**) is hereby GRANTED for reasons described in this Memorandum Opinion and Order,

in that this litigation is **STAYED** until **Friday, September 30, 2016** so that FWS can complete its ongoing ESA consultation;

      **IT IS FURTHER ORDERED** that **on or before Thursday, October 13, 2016**, Defendants shall formally advise the Court of the status of the consultation and be able to notify the Court that litigation in this case may proceed, at which point the Court will lift the stay.

_____
UNITED STATES DISTRICT JUDGE